# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR IMMIGRATION STUDIES, INC.<br><br>*Petitioner*,<br><br>v.<br><br>U.S. DEPARTMENT OF JUSTICE, U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA<br><br>*Respondent*. | No. _____ |

## DECLARATION OF ATTORNEY JOSEPH S. ST. JOHN

I, Joseph S. St. John, declare as follows:

1. I am over the age of 18. I have personal knowledge of the facts set forth herein and, if called as a witness, I could testify competently to those facts

2. I represent Petitioner Center for Immigration Studies ("CIS") in the above-captioned matter. I make this declaration in support of CIS's Petition to Modify or Set Aside.

BACKGROUND

3. Attached as Exhibit 10 is a true and accurate copy of a press release downloaded from www.justice.gov.

4. Attached as Exhibit 11 is a true and accurate copy of a statement downloaded from www.whitehouse.gov.

5. Attached as Exhibit 12 is a true and accurate copy of a press release downloaded from www.justice.gov.

6. Attached as Exhibit 13 is a true and accurate copy of a press release downloaded from www.justice.gov.

7. Attached as Exhibit 14 is a true and accurate copy of a press release downloaded from www.justice.gov.

8. Attached as Exhibit 15 is a true and accurate copy of a settlement agreement downloaded from www.justice.gov.

CONTACT WITH DOJ

9. On March, 2024, I had an initial telephone conference with AUSA Sean Tepe. Mr. Tepe stated "[t]he government is looking at PPP funds that went out the door that shouldn't have," and he noted "there's lots of news about that." Mr. Tepe then stated that "[t]hrough publicly available information [CIS] was identified as an entity that did seek a Second Draw Loan … but appears based on publicly available information—Form 990 filed with the IRS, [CIS's] website, etcetera—that [CIS] seems to fit that definition of an entity that's not eligible." Mr. Tepe then wanted to talk about "[r]esolution … without the need for litigation or further expense for something that is less than what the False Claims Act provides" and insisted "CIS was not eligible for these funds."

10. I inquired if Mr. Tepe had actually looked at CIS' certification. Mr. Tepe responded "I don't know if I've personally seen … it was a check box. There was a list of check boxes." At that point, I explained that CIS had reached out to the SBA, identified itself as a think tank, and inquired about its eligibility; CIS then received an email back from SBA telling it to move forward with the application, and CIS "attached all of that to their certification." Seeking to resolve the matter, I explained that these events destroy scienter, and the government knowledge defense would also foreclose liability because CIS told the government it was a think tank and even included that information with its loan application. Toward the end of the call, Mr. Tepe reemphasized that "we're going off of publicly available information," and he needed to consult with other DOJ staff.

11.     Attached as Exhibit 15 is a true and accurate printout of email between me and Mr. Tepe. CIS's Second Draw loan application was attached to this email.

12.     On April 2, 2024, I had another telephone conference with Mr. Tepe. He acknowledged that "CIS did reach out to SBA," but claimed SBA "didn't say one way or another whether CIS was eligible," "it's on the applicant to confirm their eligibility," and "the question then becomes is CIS eligible for the Second Draw PPP loan or not." I reiterated that that could not be a False Claims Act theory because of CIS's disclosures. Mr. Tepe, in turn, reiterated that from "publicly available information—website … Form 990, it looks to us that [CIS] was engaged in the kind of activities that were excluded from the program because it was engaged in this kind of public policy research and advocacy."

13.     Mr. Tepe pointed to a settlement in which a nonprofit paid back the loan proceeds plus interest, but stated "the position of our office is that doesn't fully make the government whole." He acknowledged that he "certainly didn't have [CIS's] email" with SBA before, but DOJ did not "believe this email materially changes the government's position that CIS was not eligible." Mr. Tepe refused to even acknowledge the existence of a government knowledge defense as a concept, and stated that "[i]f CIS would like to resolve this without having to go through an investigation, litigation, stuff like that" it should propose a settlement. I memorialized that conversation in an April 19, 2024, email, that included multiple D.C. Circuit cases discussing how disclosure to the government negates FCA liability.

14.     A true and accurate copy of email between me and Mr. Tepe is attached as Exh. 16.

15.     In an April 30, 2024 call, Mr. Tepe again repeated that "our office is taking a look at think tanks" in connection with Second Draw loans, and reiterated that "if a mutually agreeable resolution is not apparent" DOJ would serve a CID. When asked about the authorities cited in the email, Mr. Tepe remarked that "[s]cienter is a factual issue." I similarly reiterated that it's not just a

scienter issue, "it's a government knowledge issue," and expressed concern that DOJ is acting under political pressure and "taking the position that … [it] can do whatever [it] want[s]." When asked to make an offer, Mr. Tepe stated "with respect to these PPP loan cases … our office is willing to settle it for two times the original loan amount." I made clear that it would consider repayment of the loan if it was not actually eligible, but it was unwilling to repay a multiple when it had acted in good faith by inquiring about its eligibility. Mr. Tepe responded that he would need to "consult with folks … and see where our office is."

16. In a subsequent call, Mr. Tepe maintained DOJ's demand for repayment of twice the loan amount, stating that the "[f]acts would seem to suggest CIS is not eligible."

17. Attached as Exhibit 17 is a true and accurate copy of an email chain between me and Mr. Tepe.

18. Attached as Exhibit 18 is a true and accurate copy of an email chain between me and Mr. Tepe.

MISCELLANEOUS

19. I am informed that CIS's tagline is that it "is the nation's only think tank devoted exclusively to research and policy analysis of the economic, social, demographic, fiscal, and other impacts of immigration on the United States." So the resulting hit count from a search using "think tank" is high. As of October 23, 2024, a search of CIS's website for the phrase "think tank" returns 2,820 hits, all of which are equally accessible to DOJ—as DOJ has made clear in relying on CIS's website.

20. I was admitted to the practice of law in 2008. I practiced at two prominent national law firms between 2008 and 2015, with one year devoted to clerking. I also practiced at a securities litigation boutique, and served as Louisiana's Deputy Solicitor General for six years. In each of those roles, I had significant experience with document collection, review, and production. Formal,

metadata-preserving document collection—as demanded by the CID—can cost many thousands of dollars, with hosting and review platform fees costing tens of thousands of dollars (or more) depending on the volume and the length of time hosting is necessary. Having attorneys review the document collection for responsiveness and privilege can drive the cost into the hundreds of thousands of dollars, and costs of that magnitude would be foreseeable if a search and collection were conducted of data held by each of CIS's roughly 30 employees.

21. Further declarant sayeth naught.

**I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.**

Executed on October 23, 2024, in New Orleans, Louisiana.

/s/ Joseph S. St. John

_____

Joseph S. St. John