# EXHIBIT 8

...ent of Justice

Center for Immigration Studies
Attn: Mark Krikorian
1629 K Street NW, Suite 600
Washington, DC 20006



CAPITAL DIST 300/300
FRI 04 OCT 2024 PM

neopost
10/03/2024
US POSTAGE $011.26°

FIRST-CLASS MAIL

Civil Investigative Demand for Documentary Material and Written Interrogatories

# United States Department of Justice
## U.S. Attorney's Office for the District of Columbia
601 D Street, NW, Washington, DC 20530

**TO:**  **CENTER FOR IMMIGRATION STUDIES**
**ATTN: Mark Krikorian, Executive Director**
**1629 K Street N.W., Suite 600**
**Washington, DC 20006**
**msk@cis.org**

Civil Investigative Demand
No. USAO-DC-0058

This Civil Investigative Demand is issued pursuant to the False Claims Act, 31 U.S.C. § 3729, *et seq.*, in the course of a False Claims Act investigation to determine whether there is or has been a violation of 31 U.S.C. § 3729. The False Claims Act investigation concerns allegations that the Center for Immigration Studies (the "Center") made a false certification and statement in its application for a second-draw Paycheck Protection Program ("PPP") loan and as a result improperly received over three hundred thousand dollars in PPP loan funds. Specifically, we are investigating whether the Center falsely certified that it was not an entity primarily engaged in political or lobbying activities, which are expressly excluded by legislation from receiving second draw PPP loan funding.

**This Demand requires you to provide documents and answers to interrogatories set forth in Attachment A to the Federal Government.** This is the original of the Demand. The information and documents provided in response to this Demand may be shared, used, and disclosed as provided by 31 U.S.C. § 3733.

You are required by this Demand to produce any and all documents in your possession, custody, and control responsive to the Document Requests set forth in Attachment A. You must make this material available to Assistant United States Attorney Sean M. Tepe, who has been designated as a False Claims Act custodian in this case. That custodian may be contacted by phone at (202) 252-2533 or by email at sean.tepe@usdoj.gov if you have any questions.

**These documents shall be produced in the form specified in the enclosed Production Specifications no later than thirty (30) days from the receipt of this Demand**, at the U.S. Attorney's Office for the District of Columbia, 601 D Street, NW, Washington, DC 20530 or at another date and location to be mutually agreed upon by yourself and the False Claims Act custodian. The production of documentary material in response to this Demand must be made under a sworn certificate in the form contained with this Demand. If you object to any document request, the reasons for the objection shall be stated with specificity at or before the date on which your responses are due.

You are further required by this Demand to answer the Interrogatories set forth in Attachment A. **The answers to interrogatories shall be submitted no later than thirty (30) days from the receipt of this Demand**, at the U.S. Attorney's Office for the District of Columbia,

- 2 -

601 D Street, NW, Washington, DC 20530 or at another date and location to be mutually agreed upon by yourself and the False Claims Act custodian. The interrogatories shall be answered separately and fully in writing under oath and also shall be submitted under a sworn certificate in the form contained with this Demand. If you object to any interrogatory, the reasons for the objection shall be stated with specificity at or before the date on which your responses are due.


Issued at Washington, D.C., this 9th day of July 2024, pursuant to authority delegated to me by the U.S. Attorney most recently on June 29, 2022.

Digitally signed by BRIAN HUDAK
Date: 2024.07.09 15:20:05 -04'00'

BRIAN P. HUDAK
Chief, Civil Division
U.S. Attorney's Office for D.C.

- 3 -

## FORM OF CERTIFICATE OF COMPLIANCE
### Document Requests

I have responsibility for producing the documents requested in Civil Investigative Demand No. USAO-DC-0058. I hereby certify that all the materials required by that Civil Investigative Demand which are in the possession, custody, or control of the person to whom the Demand is directed have been submitted to a custodian named therein.

If any such material has not been produced because of a lawful objection, the objection to the document request and the reasons for the objection have been stated.

Signature _____

Title _____

**SWORN TO** before me this _____ day of _____, 20____

_____
NOTARY PUBLIC

- 4 -

## FORM OF CERTIFICATE OF COMPLIANCE
### Interrogatories

I have responsibility for answering interrogatory numbers _____ in Civil Investigative Demand No. USAO-DC-0058. I hereby certify that all the information required by the Civil Investigative Demand and in the possession, custody, control, or knowledge of the person to whom the Civil Investigative Demand is directed has been submitted. To the extent information has not been furnished, the information is identified and the reasons why the information was not furnished are set forth with particularity. Additionally, if any such information has not been produced because of a lawful objection, the objection to the interrogatory and the reasons for the objection have been stated. I certify under penalty of perjury that the foregoing interrogatory responses are true and correct.

Signature  _____

Title        _____

**SWORN TO** before me this _____ day of _____, 20___


_____
NOTARY PUBLIC

ATTACHMENT A

## DEFINITIONS

The following definitions (both in the singular and in the plural) shall apply to the following document requests and interrogatories:

1.      The terms "you," "your," "CIP," and the "Center" collectively refer to Center for International Policy and any and all of its past or present agents, employees, officers, predecessors in interest, successors in interest, parents, subsidiaries, and affiliated companies.

2.      The term "documents" includes all written "communications," electronically stored information ("ESI"), data, and images, and all written, printed, typed, photographed, or graphic matter of every type or description whether comprised of letters, words, numbers, pictures, sounds or symbols, or any combination thereof, and whether in paper form or stored on audiotape, videotape, computer, electronic, magnetic, or other media (including, for example, correspondence, electronic mail, text messages, calendars, drawings, databases, notes, invoices, contracts, facsimile, voicemail and telephone messages, presentations). The term "document" specifically includes: all drafts, versions, revisions, amendments, modifications, changes or side correspondence, notes, or other documents related thereto, including all non-identical copies such as those that include marginalia, deletions or alterations or other printed, stamped, post-it or handwritten revisions or notations. The terms "document" and "record" are synonymous.

3.      "Communication" means any contact by, between or among the persons or entities indicated, including all documents, electronic mail, telephone or personal conversations, presentations, meetings, conferences and discussions, at any time or place, and under any circumstances whatsoever, whereby information of any nature was stated or in any manner transmitted or transferred between two or more persons and/or entities.

4.      "Concerning" means regarding, relating to, referring to, describing, evidencing, discussing, reflecting, demonstrating, or constituting.

5.    Use of the words "and" or "or" should be read in the conjunctive and disjunctive (i.e., "and/or"), whichever is broader, and "any" and "all" include "each and every."

6.    The singular form of a noun or pronoun shall be interpreted to include the plural form and vice versa to provide the broadest possible meaning of the request.

7.    The term "including" and all forms thereof shall mean without limitation.

8.    Where examples are provided, it is for purposes of illustration and not as a limitation of the request.

9.    Whenever appropriate, the present tenses of verbs or verb forms shall be interpreted to include within their meaning the future and past tenses, and vice versa, to provide the broadest possible meaning of the request.

10.    "Time Period" means January 1, 2018, through the date the demand was served on you unless otherwise noted.

11.    "Government" or "United States" refers to all agencies, divisions, instrumentalities, and branches of the United States Government and all other projects, contracts, or expenditures funded in whole, or in part, by the United States Government.

12.    "PPP" refers to the Paycheck Protection Program administered by the U.S. Small Business Administration.

**INTERROGATORIES**

**I.    INTERROGATORY INSTRUCTIONS.**

A.    In addition to specific instructions set forth in the below Interrogatories, "identify" used in reference to an individual person means to state (a) the person's full name and present or last known address, (b) the person's present or last known position or business affiliation, and (c) the person's position, occupational series, grade level, and business affiliation during the Time Period.

B.      In addition to specific instructions set forth in the below Interrogatories, "identify" used in reference to any other person (*i.e.*, an "entity") means to state (a) the entity's full name and present or last known address, (b) the entity's type (*e.g.*, corporation, partnership, limited-liability company), (c) the entity's place of organization or incorporation, and (d) its affiliation to you.

C.      In addition to specific instructions set forth in the below Interrogatories, "identify" used in reference to a document means to state (a) the date, (b) author or addresser, (c) addressee and recipients of all copies, (d) type of document (for example, letter, memorandum, telegram, chart, photograph, brochure, email, other computer file) or some other means of identifying it, and (e) its present location or custodian.

D.      In addition to specific instructions set forth in the below Interrogatories, "identify" used in reference to a communication means to state (a) the date, (b) the place where it occurred, (c) the type of communication (for example, telephone conversation, meeting, etc.), (d) its substance, (e) the identity of the person who made it, and (f) the identity of each person who received it and of all other persons who were present.

E.      Answer each Interrogatory fully.  If you object to any Interrogatory, state the reasons for your objection, and answer the Interrogatory to the extent you do not object to it.  If you do not answer an interrogatory fully on the basis of any such objection, submit as much information as possible and explain the limitations on your response.

F.      With respect to any information for which you claim a privilege, identify the information as required above (including the general subject matter), state the privilege you purport to invoke, and state the legal and factual basis for your privilege assertion.  Any and all objections to the production of privileged information shall be made on or before the response date

for the demand. Any objection to the production of privileged information not made on or before the response date for the demand shall be deemed waived by you.

G.      If you rely or reference documents as part of your response to such Interrogatories please identify such documents in sufficient detail to enable the United States to locate and identify them as readily as the responding party could pursuant to Federal Rule of Civil Procedure 33(d)(1)—for example, by describing the document (letter, email, memorandum), providing its date, author(s), and recipient(s), and indicating in what group of materials such documents were produced.

**II.      SPECIFICATIONS / SPECIFIC INTERROGATORIES.**

YOU ARE HEREBY COMMANDED to respond the following interrogatories based on information in your possession, custody, and control concerning the Time Period using the above noted Definitions and Instructions:

1.      Describe the purpose, goals, and mission of the Center.

2.      Describe the organizational structure of the Center.  Your response should identify the Center's senior management (chief executive officer, chief financial officer, etc.) and board of director membership during the Time Period.

3.      Describe whether the Center is a business concern or entity primarily engaged in "lobbying activities" as defined in the Lobbying Disclosure Act, 2 U.S.C. § 1602.

4.      To the extent relevant, identify and describe in detail the lobbying activities that the Center has engaged in, what percentage (including total expenditures by year) that lobbying makes up of the Center's total activity and provide a listing of all lobbying and non-lobbying activities undertaken by the Center during the Time Period.

5.      Describe whether the Center conducts research concerning public policy or political strategy and identify and describe in detail the types of public policies or political strategies that

the Center researches and the specific research activities, including total expenditures by year that public policy or political strategy research makes up of the Center's total activities.

6.    Describe whether the Center engages in advocacy in areas of public policy or political strategy and identify and describe in detail the types of public policies or political strategies that the Center seeks to advance or promote and the specific advocacy activities, including total expenditures by year that advocacy makes up of the Center's total activities.

7.    Describe why or why not the Center considers itself a think tank.

8.    Describe any activity engaged in or any expenditures made by the Center that are designed to either directly or indirectly influence the enactment of legislation, appropriations, regulation, administrative action, foreign policy, or executive order proposed or pending before Congress or a federal agency, or any state government, state legislature, or local legislature or legislative body.

9.    Describe in detail all protests, campaigns, petitions, rallies, boycotts, demonstrations, conferences, or other events undertaken or funded in any way by the Center to promote, lobby, educate, advocate for, or otherwise raise awareness of its public policy positions during the Time Period.  Your description should also (a) identify any politician, officeholder, or candidate for office in federal, state, or local government that attended the event and explain the politician, officeholder, or candidate's level of participation in the event, and (b) for each protest, campaign, petition, rally, boycott, demonstration, or other such event (i) identify any Center employee, fellow, board member involved in the event; (ii) explain the Center's role (host, co-host, organizer, co-organizer, sponsor, co-sponsor); and (iii) identify all other co-hosts, co-organizers, or co-sponsors.

10.    Identify the names and titles of federal and state executive and legislative branch officials that the Center has been in contact with to promote, lobby, educate, advocate for, or otherwise raise awareness of its public policy positions during the Time Period.  Your response should identify the dates of such contacts; the Center employee, fellow, or board member involved in the contact; and the subject matter of the contact.

11.    For each employee whose salary the Center paid with funds from the second-round PPP disaster relief loan, (i) identify the employee, (ii) describe the employee's job title and job responsibilities, (iii) describe the programs and projects on which the employee worked during the Time Period, and (iv) the date that the loan funds were used to cover the salary.

12.    Identify all instances of the Center's employees, fellows, or board members offering testimony in front of Congress, or a federal agency, or any state government, state legislature, or local legislature or legislative body during the Time Period.  Your response should include the name and job title of the person testifying, the date that the testimony was offered, the governmental body receiving the testimony, the topic on which the person testified, and the circumstances that led to the person testifying, or being asked or invited to testify.

## DOCUMENT REQUESTS

I.    **DOCUMENT REQUEST INSTRUCTIONS.**

A.    This demand requires the production of all documents responsive to the requests set forth below that are in your possession, custody or control, or in the possession, custody or control of your agents, employees, accountants, attorneys or other representatives regardless of where they are located.  A document is in your control for purposes of this demand if you have the right to obtain the document or a copy of it from another person or entity.

B.      This demand seeks originals of all documents.  However, legible, true and complete copies of the originals will be accepted in place of originals, provided that you make the original records available for inspection upon request, during normal business hours.

C.      All documents produced in response to this demand shall be segregated and labeled to show the source of the documents and the location where the documents are found.

D.      Any document requested by this demand must be produced in the manner in which it has been maintained in the ordinary course of business.  To the extent that documents are found in file folders and other similar containers that have labels or other identifying and or organizing information, the documents shall be produced with such file folder and label intact.

E.      To the extent that documents are found attached to other documents, such documents shall be produced together in their condition when found.

F.      If you maintain that any document sought by this demand is protected from production by a legally recognized claim of privilege or otherwise, furnish a written statement or "privilege log" identifying the claimed privilege and identifying the document by type (*i.e.*, letter, e-mail, presentation, etc.), date, author(s), addressee(s), actual and intended recipients, subject, the number of pages, and state the reason(s) for withholding the document with sufficient specificity to enable a court of law to determine the validity of your claim of privilege.  Any and all objections to the production of privileged information shall be made on or before the response date for the demand.  Any objection to the production of privileged information not made on or before the response date for the demand shall be deemed waived by you.

G.      If, in responding to this demand, you perceive that a category of requested documents, an instruction, or a definition is ambiguous in any way, identify the matter deemed ambiguous and the construction you used in responding to these requests.

H.    To the extent that documents responsive to this demand once were, but no longer are, in your possession, custody or control, these requests require production of all existing indices, lists or documents in your possession, custody or control which reflect the transfer or destruction of, or references to, such documents.  If no documents exist that are responsive to a specification, a written statement to that effect shall be provided at the time of production.

I.    With respect to any document you produce, each original is to be produced, and each copy is to be produced if it in any way varies from the original by addition or subtraction or marginalia, notations, test, or any other information.  Additionally, each and every draft or part of any responsive document is to be produced.

J.    If subsequent to complying with this request, you obtain or become aware of any additional documents responsive to the demand, you shall promptly produce such documents.

K.    All documents produced in response to this demand shall be made in the format described in the enclosed Production Specifications unless otherwise specified or agreed to by the United States.

## II.    SPECIFICATIONS / SPECIFIC DOCUMENT REQUESTS.

YOU ARE HEREBY COMMANDED to produce the following categories of documents in your possession, custody, and control concerning the Time Period using the above noted Definitions and Instructions:

1.    All documents used in developing your responses to the interrogatories above.

2.    Mission statements, bylaws, articles of incorporation or organization, and state registration for the Center, including initial, revised, and amended versions.

3.    All applications to obtain 501(c)(3) (Form 1023) and 501(c)(4) status (Form 8976 and 1024) for the Center, including the associated approval documents and all items submitted in support of the applications.

4.      All annual reports and board of directors' agendas and minutes for the Center.

5.      Documents sufficient to identify all employees, fellows, and members of the board of directors, including their titles and dates of affiliation with the Center.

6.      All final financial statements (balance sheets, income statements, other non-profit statements, etc.) and audit reports.

7.      Financial statements or reports sufficient to show the annual amount spent, either directly or indirectly, to conduct research on matters of public policy or political strategy.

8.      Financial statements or reports sufficient to show the annual amount spent, either directly or indirectly, to advocate in areas such as public policy or political strategy, including to influence the enactment of legislation, appropriations, regulation, administrative action, foreign policy, or executive order proposed or pending before Congress or a federal agency, or any state government, state legislature, or local legislature or legislative body.

9.      All IRS Form 990s (Return for Organization Exempt from Income Tax) and associated schedules and supporting documentation for the Center.

10.     All forms submitted by the Center to the United States House of Representatives or the United States Senate pursuant to the Lobbying Disclosure Act, 2 U.S.C. § 1601 et seq., including but not limited to LD-1 and LD-2 and LD203 reports.

11.     All communications between the Center, including any of its staff, senior fellows, or members of the board of directors, and (i) Congress, including congressional staff; (ii) congressional candidate, including the candidate's staff; (iii) or any federal executive branch agency, including any employees or officials of an agency.

12.     All testimony by Center employees, fellows, or board members before Congress or a federal agency.

13.    All regulatory comments submitted by Center employees, fellows, or board members.

14.    Documents sufficient to show all meetings, events, panels, and conferences hosted or organized by the Center.

15.    All documents and communications relating to the Center's second-draw Paycheck Protection Program application, including any SBA Form 2483 (borrower application form, including Form 2483-SD), supporting documentation, and addenda. This request includes all communications with the Small Business Administration, United Bank, or any other person or entity regarding the Center's eligibility for a second-draw PPP loan.

16.    All documents relating to the Center's second-draw Paycheck Protection Program loan forgiveness application, including any SBA Form 3508 (loan forgiveness calculation, including Form 3508S or 3508EZ), and any forms and documents submitted for forgiveness. This request includes all communications with the Small Business Administration, United Bank, or any other person or entity regarding the Center's eligibility for loan forgiveness.

17.    All documents, including payroll registers, evidencing the payroll of the Center in support of its employee count at the time of its second-draw PPP loan application and forgiveness.

18.    A copy of all of the Center's issue briefs, fact sheets, position statements, reports, op-eds, published articles, newsletters, press releases, sign-on letters, and media appearances (print, television, radio, and podcasts).

19.    All documents referring to the Center as a "think tank."

//

<u>**PRODUCTION SPECIFICATIONS**</u>

<u>**Specifications for Production of ESI and Digitized / Scanned Images**</u>
**(Production Specifications)**

**Collection of Electronically Stored Information (ESI).**  Careful consideration should be given to the methodology, implementation and documentation of ESI collection to ensure that all responsive data and metadata are preserved in the collection process.

1.   **Specification Modifications.**   Any modifications or deviations from these Production Specifications shall be discussed and approved by the requesting Government agency or department (the "Department").  Any questions about these production specifications should be timely raised with the Department.

2.   **Production Format of ESI and Imaged Hard Copy.**  Responsive ESI and imaged hard copy shall be produced in the format outlined below.  All ESI, except for spreadsheets and presentation files (e.g. Excel, PowerPoint), and those forms listed below in section 7 shall be rendered to TIFF image format, and accompanied by a Concordance® Image Cross Reference file.  All applicable metadata/database fields (see section 3 below) shall be extracted and provided in Concordance® load file format.

   a)   **Image File Format.**  All images, paper documents scanned to images, or rendered ESI, shall be produced as 300 dpi single-page TIFF files, CCITT Group IV (2D Compression).  Documents should be uniquely and sequentially Bates numbered with an endorsement burned into each image.

   - All TIFF file names shall include the unique Bates number burned into the image.

   - Each Bates number shall be a standard length, include leading zeros in the number, and be unique for each produced page.

   - All TIFF image files shall be stored with the ".tif" extension.

   - Images should be able to be OCR'd using standard COTS products, such as LexisNexis LAW PreDiscovery™.

   - All pages of a document or all pages of a collection of documents that comprise a folder or other logical grouping, including a box, should be delivered on a single piece of media.

   - No image folder shall contain more than 2000 images.

   b)   **Concordance® Image Cross Reference file:** Images should be accompanied by a Concordance® Image Cross Reference file that associates each Bates number with its corresponding single-page TIFF image file.  The Cross Reference file should also contain the image file path for each Bates numbered page.

   - Image Cross Reference Sample Format:

     ABC00000001,OLS,D:\DatabaseName\Images\001\ ABC00000001.TIF,Y,,,
     ABC00000002,OLS,D:\DatabaseName\Images\001\ ABC00000002.TIF,,,,

## Specifications for Production of ESI and Digitized Scanned Images

ABC00000003,OLS,D:\DatabaseName\Images\001\ ABC00000003.TIF,,,,
ABC00000004,OLS,D:\DatabaseName\Images\001\ ABC00000004.TIF,Y,,,

c) **Concordance® Load File**: Images should also be accompanied by a "text load file" containing delimited text that will populate fields in a searchable, flat database environment. The file should contain the required fields listed below in section 3.

- ASCII text delimited load files are defined using the following delimiters:

| | |
|---|---|
| *Field Separator* | *^ or Code 094* |
| *Text Qualifier* | *| or Code 124* |
| *Substitute Carriage Return or New Line* | *() or Code 013* |

- The text file should also contain hyperlinks to applicable native files, such as Microsoft Excel or PowerPoint files.

- There should be one line for every record in a collection.

- The load file must contain a field map/key listing the metadata/database fields in the order they appear within the data file. For example, if the data file consists of a First Page of a Record (starting Bates), Last Page of a Record (ending Bates), Document ID, Document Date, File Name, and a Title, then the structure may appear as follows:

  |BEGDOC#|^|ENDDOC#|^|DOCID|^|DOCDATE|^|FILENAME|^|TITLE|

- The extracted/OCR text for each document should be provided as a separate single text file. The file name should match the BEGDOC# or DOCID for that specific record and be accompanied by the .txt extension.

3. **Required Metadata/Database Fields.** To the extent available, a "✓" below denotes that the indicated field should be present in the load file produced. "Other ESI" includes non-email files, such as, but not limited to MS Office files (e.g. Excel, PowerPoint), WordPerfect files, and any files identified in section 7.

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-Mail | Other ESI |
|---|---|---|---|---|---|---|
| CUSTODIAN | Custodian(s)/Source(s) - format: Last, First or ABC Dept | Multi-Entry | Unlimited | ✓ | ✓ | ✓ |
| AUTHOR | Creator of the document | Note Text | 160 | | | ✓ |
| BEGDOC# | Start Bates (including prefix) - No spaces | Note Text | 60 | ✓ | ✓ | ✓ |
| ENDDOC# | End Bates (including prefix) - No spaces | Note Text | 60 | ✓ | ✓ | ✓ |
| DOCID | Unique document Bates # or populate with the same value as Start Bates (DOCID = BEGDOC#) | Note Text | 60 | ✓ | ✓ | ✓ |
| PGCOUNT | Page Count | Integer | 10 | ✓ | ✓ | ✓ |

**Specifications for Production of ESI and Digitized Scanned Images**

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-Mail | Other ESI |
|---|---|---|---|---|---|---|
| PARENTID | Parent's DOCID or Parent's Start Bates (for EVERY document including all Child documents) | Note Text | 60 | ✓ | ✓ | ✓ |
| ATTACHIDs | Child document list; Child DOCID or Child Start Bates | Multi-Entry | 60 | ✓ | ✓ | ✓ |
| ATTACHLIST | List of Attachment Bates numbers | Multi Entry | Unlimited | | ✓ | ✓ |
| BEGATTACH | Start Bates number of first attachment | Note Text | 60 | ✓ | ✓ | ✓ |
| ENDATTACH | End Bates number of last attachment | Note Text | 60 | ✓ | ✓ | ✓ |
| PROPERTIES | Privilege notations, Redacted, Document Withheld Based On Privilege | Multi-Entry | Unlimited | ✓ | ✓ | ✓ |
| RECORD TYPE | File, E-mail, Attachment, or Hard Copy | Note Text | 60 | ✓ | ✓ | ✓ |
| FROM | Author - format: Last name, First name | Note Text | 160 | | ✓ | ✓ |
| TO | Recipient- format: Last name, First name | Multi-Entry | Unlimited | | ✓ | ✓ |
| CC | Carbon Copy Recipients - format: Last name, First name | Multi-Entry | Unlimited | | ✓ | ✓ |
| BCC | Blind Carbon Copy Recipients - format: Last name, First name | Multi-Entry | Unlimited | | ✓ | ✓ |
| SUBJECT | Subject/Document Title | Note Text | Unlimited | | ✓ | ✓ |
| DOCDATE | Document Date/Date Sent - Format YYYY/MM/DD | Date Keyed | YYYY/MM/DD | | | ✓ |
| BODY | E-mail body, Other Electronic Document Extracted text, or OCR | Full Text | Unlimited | ✓ | ✓ | ✓ |
| TIMESENT | Time e-mail was sent | Time | 10 | | ✓ | |
| DATECRTD | Date Created | Date | YYYY/MM/DD | | ✓ | ✓ |
| DATESVD | Date Saved | Date | YYYY/MM/DD | | ✓ | ✓ |
| DATEMOD | Date Last Modified | Date Keyed | YYYY/MM/DD | | ✓ | ✓ |
| DATERCVD | Date Received | Date | YYYY/MM/DD | | ✓ | |
| DATEACCD | Date Accessed | Date | YYYY/MM/DD | | ✓ | ✓ |
| FILESIZE | File Size | Note Text | 10 | | | ✓ |
| FILENAME | File name - name of file as it appeared in its original location | Full Text | Unlimited | | | ✓ |
| APPLICATION | Application used to create native file (e.g. Excel, Outlook, Word) | Note Text | 160 | | ✓ | ✓ |
| FILEPATH | Data's original source full folder path | Full Text | Unlimited | | ✓ | ✓ |
| NATIVELINK | Current file path location to the native file | Full Text | Unlimited | | ✓ | ✓ |

**Specifications for Production of ESI and Digitized Scanned Images**

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-Mail | Other ESI |
|---|---|---|---|---|---|---|
| FOLDERID | E-mail folder path (e.g. Inbox\Active) or Hard Copy container information (e.g. Folder or binder name) | Full Text | Unlimited | ✓ | ✓ | |
| HASH | Hash value (used for deduplication or other processing) (e-mail hash values must be run with the e-mail and all of its attachments) | Note Text | Unlimited | | ✓ | ✓ |
| MESSAGEHEADER | Email header.  Can contain IP address | Full Text | Unlimited | | ✓ | |
| ATTACHMCOUNT | Number of attachments to an email | Note Text | 10 | | ✓ | |
| FILETYPE | Identifies the application that created the file | Note Text | 160 | | ✓ | ✓ |
| COMMENTS | Identifies whether the document has comments associated with it | Note Text | 10 | | ✓ | ✓ |

4.    **Hard Copy Records.**

    a)  All hard copy material shall reflect accurate document unitization including all attachments and container information (to be reflected in the PARENTID, ATTACHID, BEGATTACH, ENDATTACH and FOLDERID). Unitization in this context refers to identifying and marking the boundaries of documents within the collection, where a document is defined as the smallest physical fastened unit within a bundle (e.g., staples, paperclips, rubber bands, folders, or tabs in a binder).  The first document in the collection represents the parent document and all other documents will represent the children.

    b)  All documents shall be produced in black and white TIFF format unless the image requires color.  An image "requires color" when color in the document adds emphasis to information in the document or is itself information that would not be readily apparent on the face of a black and white image. Images identified as requiring color shall be produced as color 300 dpi single-page JPEG files.

5.    **Common files to be produced in Native Format.**  All spreadsheet and presentation files (e.g. Excel, PowerPoint) shall be produced in the unprocessed "as kept in the ordinary course of business" state (*i.e.*, in native electronic format).  The file produced should maintain the integrity of all source, custodian, application, embedded and related file system metadata. No alteration shall be made to file names or extensions for responsive native electronic files.

    a)    **Production of Native Files (When Applicable Pursuant to These Specifications).** All native file productions shall have extracted metadata/database fields provided in a Concordance® load file format as defined in the field specifications for "Other ESI" as outlined in section 3.

6.    **De-duplication, Near-Duplicate Identification, Email Conversation Threading and Other Culling Procedures**.  De-duplication of exact copies <u>within</u> a custodian's data may be done, but all "filepaths" must be provided for each duplicate document.  The recipient shall not use any other

### Specifications for Production of ESI and Digitized Scanned Images

procedure to cull, filter, group, separate or de-duplicate, etc. (i.e., reduce the volume of) responsive material before discussing with and obtaining the written approval of the Department. All objective coding (e.g., near dupe ID or e-mail thread ID) shall be discussed and produced to the Department as additional metadata fields.

7. **The following data must be discussed with the Department in advance of producing:**

   a) Hidden Text (e.g. track changes, hidden columns, mark-ups, notes)

   b) Embedded Files (e.g. Word documents, Excel spreadsheets, .wav files, etc.)

   c) Image-Only Files (e.g. image-only files (non-searchable .pdfs, multi-page TIFFs, Snipping Tool [and other] screenshots, etc., as well as all other images that contain text)

   d) Email Repositories (e.g. email databases (e.g., Outlook .PST, Lotus .NSF, etc.))

   e) Instant Messenger (IM), Voicemail Data, Audio Data, Video Data, etc.

   f) Structured Data (e.g., Oracle, SQL, MySQL, QuickBooks, etc.)

   g) Structured Data from Proprietary Applications (e.g., proprietary timekeeping, accounting, etc.)

   h) Photographs

   i) Images from which Text Cannot be OCR Converted

   j) Format of ESI from Non-PC or Windows-based Systems (e.g., Apple, IBM mainframes and UNIX machines)

8. **Virus Protection and Security for Delivery of Production Data.** Production data shall be free of computer viruses. Any files found to include a virus shall be quarantined by the producing party and noted in a log to be provided to the Department. Password protected or encrypted files or media shall be provided with corresponding passwords and specific decryption instructions. No encryption software shall be used without the approval of the Department.

9. **Transmittal Letter to Accompany Deliverables.** All deliverables should be accompanied by a transmittal letter including the production date, case name and number, producing party name, and Bates number range produced.